**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **RICHARD MELOY,**<br>***Individually and on behalf of all others similarly situated,***<br><br>**Plaintiff**,<br><br>v.<br><br>**HOME DEPOT, INC.,** ***a Delaware Corporation***<br><br>**Defendant**. | CASE NO. ___________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Richard Meloy, individually and on behalf of the Classes defined herein of similarly situated consumers, bring this class action suit for damages and equitable relief against Home Depot, Inc. ("Defendant" or "Home Depot"). Plaintiff alleges the

following based upon personal information as to allegations regarding themselves and the investigation of his counsel, and on information and belief as to all other allegations.

## INTRODUCTION

1. Beginning in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq. ("IEEPA") to impose new and significant tariffs on imports from nearly every foreign country, including those from which Home Depot sources products.

2. The Trump administration is now in the process of refunding billions in tariff revenue after the Supreme Court struck its most sweeping tariff policy down, reporting in an August 2026 court filing that it has so far refunded $100 billion of the approximately $166 billion it's set to give back in total. That's resulted in some of the country's biggest companies and importers receiving millions in tariff refunds in recent months, with companies including Apple, Nike, GM and more reporting nine-figure refunds last quarter that have boosted their bottom lines.

3. U.S. retailers reported receiving more than $5 billion in federal tariff refunds in earnings reports released thus far, as the Trump administration undoes its signature tariff policy and pays back the money it took in—but despite studies showing that consumers bore the brunt of the initial tariff costs, companies are still largely keeping the windfalls for themselves. In earnings calls with investors, retail executives have largely suggested they intend to invest their tariff refund revenue back into their companies, rather than passing it on to shoppers who paid higher prices when tariffs went up, though some have committed to lowering prices.

4. The New York Federal Reserve reported in February 2026 that approximately 90% of the tariffs' "economic burden" has been felt by U.S. firms and consumers, including

tariffs getting passed on to consumers in the form of increased prices.[1] The bank previously found in 2025 that approximately three-quarters of businesses surveyed passed tariff costs onto consumers in some form,[2] and the Yale Budget Lab estimates the Trump administration's tariff policy—which includes other tariffs beyond the ones now being refunded—is raising each household's annual costs by approximately $1,100 per year as of August 2026.[3] A working paper published in the National Bureau of Economic Research in July 2026 similarly estimated 26% of the government's tariff increases were passed through via higher prices.[4] Those price increases are expected to continue, with the New York Federal Reserve reporting nearly half of the companies it surveyed in May 2026 were still planning additional tariff-related price bumps.

5. This class action arises from Home Depot's retention of windfall profits generated by the unlawful tariffs imposed by the Trump Administration under the IEEPA. This windfall is a direct result of Home Depot systematically passing on a percentage of the costs of IEEPA tariffs to its own customers. Indeed, Home Depot has already received $730 million in IEEPA tariff refunds in fiscal Q2 2026.[5]

6. At the company's August 18, 2026 earnings call, CFO Richard McPhail stated that amount represents the vast majority of what Home Depot expects to receive from its IEEPA claims. He added: "While these refunds were received in the second quarter, they are being used to offset unplanned and rising cost pressures throughout the year."[6]

7. The company's gross margin in the second quarter was 33.7%, an increase of about 25 basis points compared with a year earlier. That was primarily driven by the refund, offset by factors such a

---

[1] https://www.wsj.com/opinion/donald-trump-tariffs-consumers-new-york-federal-reserve-study-95bed1bc
[2] https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/
[3] https://budgetlab.yale.edu/research/state-us-tariffs
[4] https://www.nber.org/papers/w35561
[5] https://fortune.com/2026/08/19/home-depot-730-million-tariff-refund-largely-offset-rising-costs-cfo/
[6] HD – Q2'26 Home Depot Earnings Call EVENT DATE/TIME: August 18, 2026 / 09:00AM ET

as fuel and energy cost pressures, according to McPhail. Of the $730 million received, $685 million reduced cost of goods sold, while $45 million was associated with inventory, he said.

8. As a result, Home Depot reported a stronger-than-expected fiscal second quarter, although the results did not establish a broad home-improvement recovery.[7] Sales increased 5.7% to $47.86 billion, above the $47.27 billion consensus estimate. Company-defined non-GAAP adjusted diluted EPS rose to $4.92 from $4.68 and exceeded the $4.73 estimate. The number that explains the quarter is neither of those: ***it was the $685 million tariff refund benefit to cost of goods sold.*** By management's own account, without the refund the quarter's margin gain would not have held.[8]

9. This particular dispute stems from Home Depot's statements and actions around a structural inequity in the tariff refund process. While the importer of record is the only party that may recover a refund from the government for an improperly assessed tariff, the importer is often nothing more than a pass-through vehicle. Frequently, the importer simply fronts the cost of the tariff, and recovers a percentage of the cost by imposing higher prices on consumers. The consumer, for all intents and purposes, pays a percentage of the tariff.

10. On February 20, 2026, the Supreme Court held that the subject tariffs were unlawful. *Learning Res., Inc. v. Trump*, 607 U.S. ____, Nos. 24-1287, 25-250, 2026 WL 477534, at *13–14 (U.S. Feb. 20, 2026). And yet, even when the Supreme Court strikes down an unlawful tariff, the truly injured parties possess no direct avenue for redress. American consumers who bore part of the economic burden of these tariffs possess no statutory cause of action in the Court of International Trade ("CIT") — only the importer of record has standing to seek a refund, regardless of who ultimately paid. Large corporations, even if they were to pass on 100 percent of the tariff burden onto customers, remain fully empowered to recover a complete refund for any unlawful tariffs they paid.

[7] https://finance.yahoo.com/real-estate/articles/home-depot-hd-beat-q2-191002970.html
[8] https://finance.yahoo.com/markets/stocks/articles/home-depots-tariff-refund-never-194505036.html

11. This is no hypothetical. Over 2000 companies have filed lawsuits in the CIT, actively seeking refunds for every cent of their IEEPA tariff bill and the CIT has recently announced an administrative procedure to refund the unlawful tariffs without the need to file a lawsuit and Home Depot has not made any proposal to return to customers the amount of these tariffs that were previously recovered through price increases. This despite estimates from Goldman Sachs that U.S. consumers are "shouldering two-thirds of President Trump's new tariff costs."[9] Nonetheless, Home Depot has intentionally refused to refund its customers those tariff surcharges.

12. This lawsuit seeks to prevent Home Depot, the world's 50th most valuable company by market cap [10], from inequitable recovery. Plaintiff seeks a judgment that Home Depot is obligated to return to Plaintiff and proposed Class Members all IEEPA duties passed on to customers in the form of higher prices on products, with interest.

13. Plaintiff and the Classes are entitled to restitution of the tariff overcharges they paid, or a proportionate share of any tariff refunds Home Depot recovers, together with interest, reasonable attorneys' fees, and costs.

## PLAINTIFF

14. Plaintiff Richard Meloy is a resident of this District, residing at 1130 Eaver St, Mogadore, Ohio 44260.

15. Mr. Meloy is a Home Depot customer. Within the Class Period, Mr. Meloy purchased various products from Home Depot, both for use as a commercial contractor and as a consumer for personal projects. Upon information and belief, many of these products

[9] Nick Lichtenberg, Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

[10] https://companiesmarketcap.com/home-depot/marketcap/#google_vignette

were imported from countries subject to IEEPA tariffs, at prices inflated by Home Depot's pass-through of IEEPA tariff costs.

## DEFENDANT

16. Defendant Home Depot Inc. ("Home Depot") is a Delaware corporation, publicly traded under the NYSE ticker symbol "HD," with its principal place of business at 2455 Paces Ferry Road, Atlanta, GA 30339.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Home Depot.

18. This Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Home Depot's obligation to return to the consumers who paid them the IEEPA tariff surcharges, as well as any IEEPA refunds Home Depot recovers from the United States.

19. This Court has personal jurisdiction over Home Depot because it conducts continuous and systematic business in the state of Ohio, ships goods to and from Ohio on a daily basis, maintains operational facilities and employees in Ohio, and collected the unlawful IEEPA tariff surcharges from Plaintiff and proposed Class members within this District.

20. Venue is proper in this District under 28 U.S.C. § 1391(b) because Mr. Meloy resides in this District, and a substantial portion of the events giving rise to this action occurred in this District, including Plaintiff's purchases of tariffed goods at a Home Depot retail store in Ohio.

## NATURE OF THE ACTION AND FACTUAL BACKGROUND

### *a. The IEEPA Tariffs and Their Invalidation*

21. Beginning in February 2025, the President issued a series of executive orders invoking IEEPA to impose new tariffs on goods imported from nearly every foreign country. These included tariffs of 25% on imports from Canada and Mexico (Exec. Orders 14193[11] & 14194[12]), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195[13], 14228[14], 14259[15], and 14266[16]), and a baseline 10% tariff on nearly all other imports under the "reciprocal tariff" order of April 2, 2025 (Exec. Order 14257[17]), with higher country-specific rates ranging from 11% to 50% on 57 countries.

22. On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs in a 6-3 decision. The Court stated: "We hold that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. ___(2026) (slip op. at 20).

23. CBP announced on February 22, 2026 that IEEPA duty collection would cease effective February 24, 2026.

### *B. Home Depot's Business Model*

24. In 2024, Home Depot ranked 48th in the Fortune 500, with annual revenues of $152 billion.[18] The company stocks more than 35,000 products in its stores and 1 million products online,

---

[11] Exec. Order No. 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025).
[12] Exec. Order No. 14194, Imposing Duties To Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[13] Exec. Order No. 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[14] Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[15] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15509 (Apr. 14, 2025)
[16] Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).
[17] Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).
[18] https://umbrex.com/resources/strategy-of-the-fortune-500/strategy-of-home-depot/

and it employs more than 470,000 people worldwide.[19] Home Depot operated 2,359 stores at the end of fiscal 2025, and almost all were in the U.S. and its territories.[20] The company serves DIY consumers, professional contractors, small and medium enterprises and commercial clients by providing building materials, home improvement products, appliances and garden supplies. Home Depot's market strategy is "to solidify its position as a leading home improvement retailer while focusing on growth, customer satisfaction, and sustainability."[21] It imports products for retail sale primarily from China, Canada, Mexico, Malaysia, Vietnam and Tiawan.[22] Key targets include:

- Achieving a return on invested capital (ROIC) of greater than 25% by fiscal year 2025.
- Increasing sales by approximately 3% to 4% annually, with a focus on maintaining strong performance in both online and in-store channels.
- Committing to sustainability goals, including reducing carbon emissions across its operations and supply chain, with a target of 100% renewable energy in its facilities by 2030.

### C. ***Home Depot's Response to the IEEPA Tariffs***

25. Although they may be nominally directed extraterritorially, the increased costs created by the subject tariffs are borne almost entirely by U.S. importers and consumers.[16] Researchers studying recent tariffs estimate that approximately 96% of the tariff cost burden is passed through to American consumers.[23]

26. While importers must pay the subject tariffs at the border, wholesalers, manufacturers, and retailers all face a choice: whether to absorb the burden of the subject tariffs or to pass that burden on to their customers.[24] In most cases, including in the case of Home Depot, part of the burden of tariffs is eventually passed through to U.S. consumers through retail price increases.[25]

---

[19] https://finance.yahoo.com/markets/stocks/articles/many-stores-does-home-depot-002837601.html
[20] Id.
[21] https://umbrex.com/resources/strategy-of-the-fortune-500/strategy-of-home-depot/
[22] https://www.cnbc.com/2019/08/20/home-depot-says-suppliers-are-moving-manufacturing-out-of-china.html
[23] Julian Hinz, et al., America's Own Goal: Who Pays the Tariffs? Kiel Inst. for the World Econ. (Jan. 19, 2026), https://www.kielinstitut.de/fileadmin/Dateiverwaltung/IfW-Publications/fis-import/92fb3f30-07b8-4dcf-b2bcfbefb831f1a1-KPB201_EN.pdf .
[24] Id. At 7.
[25] Id.

27. Throughout the Class Period, Home Depot paid IEEPA tariffs to CBP. Home Depot, like most U.S. firms, passed part of the tariff burden onto consumers through elevated retail pricing. Home Depot's gross margin data during the tariff period reflects its ability to sustain and expand margins while consumers bore increased costs.

28. Home Depot was able to increase the price of tariffed goods during the peak of the IEEPA tariff regime by selectively raising prices on tariffed goods. The higher prices consumers paid were a consequence of Home Depot's increased cost of importation. Absent the imposition of the unlawful IEEPA tariffs, Home Depot would not have needed to raise prices on consumers in this way.

29. More specifically, at the same earnings call on August 18, 2026, CFO Richard McPhail prompted the following telling dialogue with investment representatives regarding tariff refunds:

> **Chuck Grom - *Gordon Haskett, Analyst***
> Okay. That's great. And then, Richard, just on the tariff refund of $685 million, can you speak to how much of that was for inventory that flowed through the P&L in 2Q versus how much was flowed through the P&L in prior quarters? And, I guess, are you expecting any more refunds to help you in the back half of the year? And then, when we think about next year in the lap of that $685 million, how should we think about that in terms of the gross margin impact?
>
> **Richard McPhail - *The Home Depot, Inc. - EVP & CFO***
> Yeah, great. Thank you for the question. So, let me give you some numbers to clarify the tariff refunds, and then we'll talk about how this works through the year, and then into next year. So, we received $730 million in tariff refunds during the quarter. We received all those right around the end of the month of June.
>
> Of that $730 million, $685 million reduced our cost of goods sold as they applied to products that have already been sold. The remaining $45 million remains in inventory, and will hit the P&L as we turn inventory through the remainder of the year.
>
> And so, let's just talk about the shape of the year – how this impacts the shape of the year, because your question is lapping into next year. So, thinking about how they impacted the quarter, $685 million reduction in COGS was about a 145-basis-point gross impact to margin. As we said in our prepared remarks, those benefits offset increased costs that we've seen in our cost base of about 60 basis points. So, you can think about the net benefit of refunds in our P&L being around 85 basis points.
>
> And just to tie out the numbers on gross margin really quickly, we also had the mix impact of the GMS and Mingledorff's acquisitions have an impact of about 60 basis points. So, net benefit of tariff of 85 basis points, mix impact of 60 basis points. So,

that gives you the year-over-year increase of about 25 basis points. So, just talking about the nature of refunds, while we received those refunds in the second quarter, we've also experienced unplanned pressure from fuel, energy, and other product input costs that, we expect, will fully offset the benefit from tariff refunds over the year.

And so, if you think about the shape of the P&L, while those refunds are going to go to offset costs in, call it, Q3 – sorry, Q2 and Q3, because we book all of the refunds when we receive the cash, you are going to see a little bit of a P&L shift between Q2 and Q3.

And, Billy, maybe just talk about the environment we're in, and how we've looked at tariffs.

**Billy Bastek - The Home Depot, Inc. – EVP, Merchandising**
Yeah. I mean, you mentioned, Richard, some of the inputs – the incremental inputs to what we planned coming into the year. Certainly, we've seen incremental cost pressure related to fuel, energy, other product inputs. You can think of commodities with resin and metals. So, we didn't have that in our plan as we came into the year. So those are incremental.

And then the other piece I would mention that maybe gets overlooked is there's been some changes in tariffs incrementally relative to our planning process coming into the year. Section 101 expired in July. It was updated in February, expired in July, and replaced with the Section 301 piece. So, those were actually also incremental to what we had forecasted coming into the year. So, we're doing a great job of offsetting that, the merchants doing a great job with our supply chain teams, but those are incremental pressures that we did not have as part of our outlook for 2026.

**Richard McPhail - The Home Depot, Inc. - EVP & CFO**
And so, Chuck, just to get back to your question, because we expect the tariff refunds to be fully offset by the incremental cost pressure that Billy called out, we've reaffirmed our guidance for the year. And so, while you might see some timing – some lapping next year on a quarterly basis that we'll need to take you through, there shouldn't be a lap from an annual perspective when we head into 2027.[26]

30. Subsequent to the Supreme Court's landmark decision invalidating tariffs imposed under the IEEPA, the U.S. Court of International Trade (CIT) ordered U.S. Customs and Border Protection (CBP) to remove IEEPA duties from all affected entries. In an order issued March 4, 2026, in *Atmus Filtration, Inc. v. United States* (Ct. No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.)[21], the CIT directed CBP to liquidate all unliquidated entries without IEEPA duties and to reliquidate any entries not "finally liquidated" without IEEPA duties. Under the *Atmus* Order, Home Depot is entitled to a refund of the IEEP

[26] HD – Q2'26 Home Depot Earnings Call EVENT DATE/TIME: August 18, 2026 / 09:00AM ET

tariffs ("All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.").

31. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at 6. Home Depot, as one of the country's largest importers, is entitled to as much as $1 Billion dollars in refunds.

32. As a direct result of Home Depot's tariff pass-through pricing, Class Members paid more for tariffed goods than they would have paid absent the unlawful IEEPA tariffs. Unless the Court intervenes, Home Depot will be paid twice for the same unlawful tariff burden: once by its customers (through elevated prices) and once by the U.S. government (through tariff refunds).

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action on behalf of himself, individually, and on behalf of all others similarly situated (the "Nationwide Class") as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4).

34. The Nationwide Class is initially defined as follows:

> **All persons who purchased, from any Home Depot retail channel, any good subject to the tariffs imposed under IEEPA, during the period February 1, 2025 through February 24, 2026.**

35. Additionally, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4), Plaintiff bring this action on behalf of the following Ohio Class initially defined as:

> **All persons in the state of Ohio who purchased, from any Home Depot retail channel, any good subject to the tariffs imposed under IEEPA, during the period February 1, 2025 through February 24, 2026.**

36. The Nationwide Class and the Ohio Class are referred to herein as "Classes," unless otherwise stated.

37. Excluded from the Classes are: (a) Defendant; (b) subsidiaries and affiliates of Defendant; (c) any person or entity who is an officer, director, employee, or controlling person of Defendant; (d) any entity in which Defendant has a controlling interest; (e) the

legal representatives, heirs, successors, and assigns of any excluded party; and (f) any judicial officer presiding over this action, the members of his or her immediate family and staff, and any juror assigned to this action.

38. The Class Period is February 1, 2025 through February 24, 2026. Plaintiff reserves the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues. As described below, the Class satisfies the elements of Fed. R. Civ. P. 23(a) and Rule 23(b).

39. ***Numerosity***. The Members of the Class are so numerous that joinder of all Members is impracticable. As alleged, Home Depot operated 2,359 stores at the end of fiscal 2025, and almost all were in the U.S. and its territories. Home Depot sells millions of products each month, and upon information and belief, there are several millions of people in the proposed Class.

40. ***Typicality***. Plaintiff's claims are typical of the claims of the Members of the Class. Throughout the Class Period, Mr. Meloy purchased various commercial and consumer products from Home Depot that were imported from countries subject to IEEPA tariffs, at prices inflated by Home Depot's pass-through of IEEPA tariff costs. Plaintiff's claims are also typical of the other Class Members in that Plaintiff has been damaged as a result of paying an unfairly elevated price to Home Depot.

41. ***Adequacy***. Plaintiff will fairly and adequately protect the interests of the putative Class and has retained counsel competent and experienced in class action litigation. Plaintiff is committed to the vigorous prosecution of this action and has no interests that are adverse or antagonistic to the Class.

42. ***Superiority***. A class action is superior to any other available means for the fair and efficient adjudication of the Classes' claims. The damages suffered by certain individual Members of the Class are relatively small compared to the burden of individual prosecution of the complex litigation required to recover from Home Depot. It would be impractical for most, if not all, Class Members to seek relief on an individual basis. Furthermore, individual litigation could result in thousands of individual lawsuits, introducing the risk of inconsistent judgments and increasing the delay and expense to all parties. In contrast, a class action would present far fewer administrative difficulties. The Members of the Class are ascertainable through methods typical of class action practice and procedure, including

through Home Depot's own transactional records.

43. ***Predominance of Common Questions of Law and Fact***. Numerous questions of law and fact are common to Plaintiff and all Members of the Class. These common questions will result in common answers for all Class Members that will impact the resolution of the claims on grounds equally applicable to all Class Members. These common questions, which predominate over any questions affecting only individual Class Members, include, but are not limited to:

a. Whether a portion of the higher prices that consumers paid for Home Depot's products are attributable to the cost of IEEPA tariffs;

b. Whether Home Depot is obligated to return IEEPA duties to the consumers who paid them in the form of higher prices;

c. Whether Home Depot's retention of elevated consumer payments constitutes unjust enrichment;

d. Whether Home Depot acted unfairly or deceptively by up-charging consumers in response to tariff-related costs while failing to reimburse consumers upon learning the tariffs were illegal;

e. Whether Home Depot's conduct constitutes an unfair practice under the consumer statutes;

f. Whether Home Depot's failure to disclose its pending CIT lawsuit to customers at the point of sale or otherwise constitutes a material omission or misrepresentation under the consumer statutes;

g. Whether Home Depot's conduct has harmed Plaintiff and the Class uniformly;

h. The measure of damages available to Plaintiff and the Class due to increased prices caused by Home Depot's tariff pass-through; and

i. Whether restitution is the appropriate measure of relief, and if so, the appropriate amount.

44. ***Rule 23(b)(2) Class Certification***. Home Depot has acted in a manner that applies generally to the proposed Class, making both declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Home Depot's decision to raise prices on goods subject to IEEPA duties, and then seek a blanket refund from the government

without committing to establish any customer refund mechanism, warrants class-wide declaratory and injunctive relief.

**COUNT I**

***Violation of the Ohio Consumer Sales Practices Act ("OCSPA") (R.C. 1345, et. set.)***

*(On Behalf of Plaintiff and the Ohio Class Only)*

45. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

46. The Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01 et seq., prohibits suppliers from committing unfair or deceptive consumer sales practices in connection with a consumer transaction.

47. Plaintiff and each Class Member is a "consumer" within the meaning of R.C. § 1345.01(D), having purchased goods from Home Depot for personal, family, or household purposes.

48. Home Depot is a "supplier" within the meaning of R.C. § 1345.01(C), regularly engaged in the business of selling consumer goods to Ohio residents.

49. Plaintiff, the Class Members and Home Depot engaged in a "Consumer Transaction" as that term is defined under the OCSPA. Each purchase of tariffed goods by an Ohio Class Member from any Home Depot retail channel during the Class Period constitutes a "consumer transaction" within the meaning of R.C. § 1345.01(A).

50. The OCSPA prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction, whether it occurs before, during, or after the transaction. That "after the transaction" language is critical — it expressly reaches post-sale conduct such as a refusal to process a refund for an improper charge. The supplier's retention of money it was not entitled to collect is itself the unfair and deceptive act.

51. R.C. §1345.03(B)(7) specifically enumerates as an unconscionable factor "whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's

refund policy." This provision is directly on point where a supplier collected a charge it was not entitled to and then refused to return it. The "without justification" standard is easily met when the charge itself was improper from inception — there is no legitimate basis to retain it.

52. Upon information and belief, Home Depot has never posted a refund policy placing Home Depot’s customers on notice that the customers would not be entitled to a refund of the inflated consumer product prices related to the IEEPA tariffs, in the event Home Depot received a refund for the unconstitutional tariffs.

53. Ohio R.C. 1345.03(A) makes Home Depot’s knowing retention of and refusal to refund its customers, the excess mounts they paid under the illegal IEEPA tariff regime, but refunded to Home Depot by the U.S. Government, unconscionable as a matter of law.

54. Ohio Courts have held that substantially similar conduct by a supplier for its failure to provide refunds owed to consumers constitutes a deceptive act under the CSPA. See, e.g., *State ex rel. Ohio AG v. Foster*, 2013 Ohio Misc. LEXIS 10762 (2013), *State v. Stephens Inv. & Fin. Servs*., 2011 Ohio Misc. LEXIS 17160 (2011).

55. The OCSPA is a remedial statute designed to protect consumers and is to be liberally construed in their favor. *Price v. Evans Auto. Repair, Inc*., 2024-Ohio-5108 (2024); *Einhorn v. Ford Motor Co.*, 48 Ohio St. 3d 27 (1990). Home Depot’s retention of funds that rightfully belong to Plaintiff and the consumer Class Members undermines the fairness and transparency that the OCSPA seeks to ensure in consumer transactions.

56. Home Depot's unfair and deceptive practices were willful, as Home Depot possessed actual knowledge that it was raising consumer prices in response to tariff costs while simultaneously pursuing government refunds for those same costs, and affirmatively chose not to disclose this dual recovery strategy to its customers.

57. Plaintiff and the Class Members were damaged as a proximate result of Home Depot's unfair and deceptive practices, in an amount equal to the tariff cost component embedded in the prices they paid.

58. By engaging in the foregoing conduct, Home Depot has engaged in unfair competition or unfair or deceptive acts in violation of Ohio Rev. Code Ann. §§ 1345.01 et seq. (Ohio Consumer Sales Practices Act), with respect to Class Members' Home Depot

purchases made in Ohio and/or Home Depot purchases by Ohio residents.

59. Pursuant to R.C. § 1345.09, Plaintiff and Ohio Class Members are entitled to:

a. Rescission of the consumer transactions and a full refund of the tariff cost components paid, or, in the alternative, actual economic damages in an amount to be determined at trial;

b. Because Home Depot's violations were willful within the meaning of R.C. § 1345.09(B), noneconomic damages of not more than $5,000 per violation;

c. An injunction, pursuant to R.C. § 1345.09(D), prohibiting Home Depot from engaging in the deceptive and unfair acts and practices described herein;

d. Reasonable attorneys' fees pursuant to R.C. § 1345.09(F)(2); and

e. Such other relief as the Court deems appropriate.

60. Plaintiff and the Class Members are entitled to actual damages, injunctive relief, attorneys' fees, and such other relief as the Court deems appropriate.

**COUNT II**

***Quasi Contract / Unjust Enrichment***

*(On Behalf of Plaintiff and the Class)*

61. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

62. As described herein, Defendant charged Plaintiff and each member of the proposed class tariff surcharges when they purchased Defendant's products. By collecting these tariff surcharges, Defendant received and knowingly and willingly accepted a direct benefit at Plaintiff's and the members of the proposed Class's expense. The Supreme Court has determined that the tariffs were unlawful and the Class conferred a benefit upon Home Depot in the form of the inflated prices they paid on a wide array of goods subject to the IEEPA tariffs. These inflated prices were caused by Home Depot's attempt to pass on part of the costs of the IEEPA tariffs.

63. It would be unjust for Defendant to retain tariff surcharges to cover the expense of the

subject tariffs when Defendant is entitled to a refund for the subject tariffs paid.

64. Defendant's unjust conduct was the proximate cause, and a substantial factor, in causing Plaintiff and the members of the proposed Class's losses and damages

65. Under the circumstances detailed in this Complaint, equity requires that Home Depot pay and return to Plaintiff and the Class any IEEPA tariff costs passed through to customers, the amount of which will be proven at trial.

**COUNT III**

***Money Had and Received***

*(On Behalf of Plaintiff and the Class)*

66. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

67. Home Depot received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

68. Home Depot received this money for the purpose of repaying itself part of the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

69. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization and were unlawful.

70. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff and to each Member of the proposed Class.

71. Defendant has not returned the money.

72. In equity and good conscience, Home Depot should not be permitted to retain the funds consumers paid above and beyond what they would have absent the IEEPA tariffs. The money belongs to Plaintiff and the Class, and Home Depot is obligated to return it. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Home Depot's retention of consumer overcharges already collected, this Count more particularly addresses Home Depot's receipt and/or anticipated retention of government refund proceeds that, in equity, represent a return of money that

was economically borne by Members of the Classes, not by Home Depot.

**COUNT IV**

***Injunctive Relief Under Federal Rule Of Civil Procedure 23(b)(2)***

*(On Behalf of Plaintiff and the Class)*

73. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

74. Federal Rule of Civil Procedure 23(b)(2) permits class certification where the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

75. Home Depot has acted and continues to act on grounds generally applicable to the Class. Specifically, Home Depot has: (a) uniformly passed through a portion of the IEEPA tariff costs to all customers purchasing tariffed goods; (b) uniformly failed to establish any customer refund mechanism for the tariff costs it passed on; and (c) has failed to commit to returning to its customers any tariff refunds it is entitled to receive rather than retaining those tariffs to benefit only Home Depot.

*76.* Absent injunctive relief, Home Depot will retain all ill-gotten increased profits from unlawful tariffs and/or government tariff refunds — which may approach one billion dollars — without compensating the consumers who actually bore a substantial portion of the economic burden of those tariffs. This harm is imminent, as the Court of International Trade has already issued a refund order and refund payments are anticipated imminently. See *Atmus, supra.*

77. Plaintiff and the Class will suffer irreparable harm absent injunctive relief. Monetary damages alone may be inadequate to remedy the harm because: (a) the refund proceeds may be commingled with general corporate assets making tracing difficult or impossible; (b) future price reductions, as vaguely promised by Home Depot, do not constitute adequate legal relief for past economic injuries; and (c) the diffuse nature of the harm across millions of consumers creates practical barriers to full monetary recovery.

78. Plaintiff therefore requests that the Court, pursuant to Federal Rule of Civil Procedure 23(b)(2), enter injunctive relief:

a. Enjoining Home Depot from retaining, disbursing, or otherwise dissipating any IEEPA tariff refunds received from the U.S. government, pending resolution of this litigation;

b. Requiring Home Depot to establish and maintain an identifiable, segregated account, i.e. constructive trust, to hold all IEEPA tariff refunds received from the U.S. government pending further order of this Court;

c. Requiring Home Depot to disclose to this Court and to Class Members the total amount of IEEPA tariff refunds it has received or anticipates receiving from the U.S. government; and

d. Requiring Home Depot to establish a fair and equitable refund mechanism through which affected Class Members may recover the tariff cost component of the inflated prices they paid during the Class Period.

79. The proposed injunctive relief is appropriate respecting the Class as a whole because Home Depot's conduct and the requested relief apply uniformly and without differentiation to all Class Members.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff requests that the Court provide the following relief:

80. Determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23 and direct that notice of this action be given to Members of the Class;

81. Enter an Order declaring that Home Depot's actions violate the Ohio Consumer Sales Practices Act and/or equitable principles underlying the Ohio claims under the Ohio Consumer Sales Practices Act;

82. Award Plaintiff and the Class damages or restitution in the amount to be determined at trial that Home Depot was unjustly enriched by the tariff-cost component of prices charged to Class Members;

83. Award Plaintiff and the Ohio Class actual damages, and such other statutory relief as is available, pursuant to the Ohio Consumer Sales Practices Act, in an amount to be determined at trial;

84. Enter a declaration that Home Depot is obligated to return to Plaintiff and proposed Class Members all IEEPA duties passed on to customers in the form of higher prices on

products, with interest;

85. Enter injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) as described in Count IV, including enjoining Home Depot from retaining government tariff refunds pending resolution of this litigation and requiring Home Depot to establish a consumer refund mechanism;

86. Enter injunctive relief pursuant to the Ohio Consumer Sales Practices Act, R.C. § 1345.09(D), prohibiting Home Depot from continuing to engage in the deceptive and unfair acts and practices described herein with respect to Ohio consumers;

87. Award Plaintiff and Class Members rescission, actual damages, and non-economic damages pursuant to R.C. § 1345.09, including attorneys' fees;

88. Award prejudgment and post-judgment interest;

89. Award Plaintiff reasonable attorneys' fees and costs;

90. Award Plaintiff and the putative Class Members damages in an amount in excess of $75,000.00.

91. Grant such other equitable relief as the Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ George W. Cochran*

George W. Cochran (Ohio Bar No. 0031691)
1981 Crossfield Circle
Kent, Ohio 44240
Telephone: (330) 607-2187
Fax: (330) 595-4513
lawchrist@gmail.com

Attorney for Plaintiff Richard Meloy and
the Putative Classes